KLEES, Judge.
Emanuel Julien has appealed a trial court judgment entered on a jury verdict that found him guilty of armed robbery, guilty of attempted armed robbery, and guilty of two charges of attempted first degree murder. Julien argues the trial court erred by effectively denying him the right to voir dire examination of prospective jurors. Julien also appeals the trial courts’ sentence, arguing that it is excessively severe.
On December 29, 1990, at approximately 12:30 a.m., Peggy Salvaggio and Gina Marci-ante left the Parkway' Tavern restaurant. While they attempted to get into their car, the appellant and Torrence Mayho pulled up next to the car. Julien jumped out of the passenger side of the car with a gun and demanded that Ms. Salvaggio give him her purse. Ms. Salvaggio threw the purse at the appellant. At this point he pointed the gun at Ms. Marciante, who was on the other side of the car, and demanded that she give him her purse. Ms. Marciante replied that she did not have a purse and began to run. The appellant and Mayho became nervous and drove off. Ms. Marciante ran to the Parkway Tavern to seek help. The victims were able to give officers a description of the car and a description of the appellant and May-ho.
At trial Officer John Parker testified that he and his partner, Officer Calvin Wilson, observed two cars parked at the intersection of Bullard and Lake Forest. The officers believed that the occupants of the cars were having car trouble so they attempted to stop to offer assistance. (Trial Transcript, pg. 62) Julien and Mayho were standing outside of the car. When they observed the officers approaching, they jumped in the car and drove off. The officers approached the remaining vehicle and asked if there was a *781 problem. The subject in the car informed the officers that the appellant and Mayho had a gun and tried to rob him. The officers pursued Julien. Attempts were made to pull the him over but he refused. He began shooting at the officers while they were chasing him. Eventually the gun was thrown from his ear. He pulled the car over and the officers made the arrest.
Julien and Mayho were taken back to the police station. Ms. Salvaggio and Ms. Marci-ante made a positive identification of the car and Julien.
ERRORS PATENT
A review of the record for errors patent reveals none.
In his first assignment of error Julien asserts that the limited scope of defense counsel’s voir dire led to his conviction.
The record reflects that while counsel was questioning the second panel of jurors he attempted to repeat the discussion he had with the first panel on the difference between the burden of proof in a criminal case and the burden of proof in a civil case. The trial court interrupted counsel and forbade him from discussing that point again:
BY MR. GREEN: Did you all hear the discussion the first time about the burden of proof in criminal court as opposed to the burden of proof in Civil District Court? If you were in Civil District Court, —
BY THE COURT: They heard that already, Mr. Green. They said they did. Let’s move on.
BY MR. GREEN: Are you saying I can’t discuss it at all, your honor?
BY THE COURT: Correct.
BY MR. GREEN: O.K. Note my objection, please.
BY THE COURT: Let the objection be noted. Anybody have any problems with what they heard before concerning the civil juries and criminal juries? Lets proceed. Mr. Green, do you want me to take it all over?
By Mr. Green: No, your honor ... Every question I would ask I asked the first panel so if I can’t ask ...
BY THE COURT: ... Now, if you ask questions that I think have already been repeated, I’m going to tell you so. And I’m going to tell you to move on. I expect you to take your objection and then move on. If you have any special problems you may approach the bench. But none of that has occurred so far. If your refuse to conduct the voir dire as I instruct you, then I will order you to sit down and I will take over the voir dire. That is exactly, correct, Mr. Green.
BY MR. GREEN: If I can’t discuss any of the questions with this panel that I did with the first panel, then I don’t have any questions of the panel.
BY THE COURT: Alright. Let the record so reflect.
BY MR. GREEN: I note my objection. I have no further questions. (Voir Dire Transcript, pp. 4-7)
Julien argues that the trial court denied counsel the right to voir dire the second jury panel. He argues that counsel was not allowed the opportunity to question jurors about their experience and attitudes which might influence their ability to follow the law. He also argues that the trial court committed the same error that the Louisiana Supreme Court found to be reversible in State v. Hall, 616 So.2d 664 (La.1993). (Appellant’s Brief, Pg- 5).
In State v. Hall, 616 So.2d 664, 668, 669 (La.1993), the Louisiana Supreme Court held that the trial judge’s limitation of the defense’s ability to examine prospective jurors on their understanding of the law constitutes reversible error. The Court explained:
La. Const. Art. 1, Sec. 17 guarantees that “[t]he accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily.” La. Code CrimJP. art. 786 further provides that the court, the state and the defendant shall have the right to examine prospective jurors and the scope of the examination shall be within the discretion of the court. The purpose of voir dire examination is to determine qualification of prospective jurors by testing their competency and impartiality. It is designed to discover bases *782 for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. The scope of voir dire examination is within the sound discretion of the trial judge and his ruling will not be disturbed on appeal in the absence of a clear abuse of discretion. However, although the trial judge is vested with discretion to limit the voir dire examination, he must afford wide latitude to counsel in the conduct of voir dire examination to effectuate the accused’s right to full voir dire of prospective jurors, a review of the trial judge’s rulings should be undertaken only on the record of the voir dire examination as a whole. State v. Williams, 457 So.2d 610 (La.1984); State v. Jackson, 358 So.2d 1263 (La.1978).
The error that the trial court committed in restricting counsel’s voir dire in Hall is much more severe than the error appellant alleges the trial court committed in his case. In Hall the defendant was charged with first degree murder. During voir dire counsel attempted to discuss reasonable doubt, specific intent, responsive verdicts, the elements of the crime charged, as well as the elements of the responsive verdicts. When defense counsel attempted to pose a hypothetical situation to help better explain the law to the prospective jurors, the trial court would interrupt and inform counsel that he was only allowed to question jurors on whether or not they could follow the law. Hall, 616 So.2d at 667. The Louisiana Supreme Court concluded:
The trial judge’s limitation of the defense’s questioning to whether the jurors would accept the law as given has never been favored in our law. Rather, this court has rejected the contention that unjustified restrictions on voir dire can be cured by a response on the part of a prospective juror that he will follow the law as given to him by the judge when the juror is unaware of the complexity of the law and where that law involves such a basic right of the defendant. State v. Lee, 559 So.2d 1310,1316 (La.1990); State v. Brumley, 320 So.2d 129 (La.1975). Hall, 616 So.2d at 669
In the case at hand, trial counsel was not prohibited from examining prospective jurors. Counsel elected to discontinue questioning the panel after the trial court refused to allow him to repeat what the panel had already heard. Counsel asked the panel if they had heard his discussion on the difference between the burden of proof in a criminal case and the burden of proof in a civil case. The jurors obviously heard the discussion and understood the concept because they had no questions. (Voir Dire Transcript, pg. 5). The trial court did not prohibit counsel from asking other questions of the panel, the court just made it clear that it would not allow repetitive questions. Counsel had the opportunity to question jurors on other points of law, but he elected not to do so. Appellant has failed to show that the trial court restricted the examination of jurors. His argument is without merit and should be denied.
Appellant argues in his next assignment of error that the trial court imposed an excessive sentence.[1]
On January 8, 1993 appellant was sentenced under the Habitual Offender Statute to serve sixty years in the Department of Corrections without the benefit of probation, parole, or suspension of sentence, as to the armed robbery conviction. Immediately following the sentence, he filed a motion to reconsider sentence on the grounds that the sentence was excessive. On January 15, 1993 the trial court the motion.
Appellant contends that the sentence of sixty years exceeds the maximum sentence recommended by the sentencing guidelines. The sentencing range for armed robbery with armed robbery as a prior felony convie *783 tion is 210-240 months or seventeen and one half years to twenty years.[2]
The statutory minimum for a second offender convicted of armed robbery is forty-nine and one half years. Section 211 of the sentencing guidelines provides:
If an offender has been convicted of an offense for which a mandatory term of imprisonment must be imposed which exceeds the maximum duration provided in the designated sentence range for that offense, the court should impose the minimum sentence required by law to be served in the manner required by law unless aggravating circumstances justify imposition of a more severe sentence.
During sentencing the trial court indicates that it reviewed the sentencing guidelines prior to the imposition of the sentence. (Sentencing Transcript, pg. 11) The trial court is not specific as to why it imposed a sentence of sixty years. The trial court seems to have been of the opinion that the minimum he could give the appellant was sixty years: “I’m very familiar with the guideline requirements by the Code of Criminal Procedure, and the Court is constrained to give the defendant sixty (sixty) years "with the Department of Corrections ...” (Sentencing Transcript, pg. 11).
The trial court’s failure to articulate any aggravating circumstance for imposing a more severe sentence renders appellant’s sentence illegal. Appellant’s sentence is a gross deviation from the sentencing guidelines, State v. Smith, 610 So.2d 152 (La.App. 4th Cir.1993). In accordance with La.C.Cr. Pro. art. 881.4, appellant’s sentence of sixty years should be vacated and remanded to the trial court for re-sentencing.
Accordingly, appellant’s convictions should be affirmed and the sentences in counts two, three, and four should be affirmed. The sentence in count one should be vacated and remanded to the trial court for re-sentencing to a term not to exceed the statutory minimum of forty-nine and one-half years without the benefit of probation, parole, or suspension of sentence.
AFFIRMED; REMANDED AS AFFIRMED.
BARRY, J., concurs in part, dissents in part.
WARD, J., dissents.

. The appellant begins his argument by addressing the excessiveness of the multiple bill sentence. He contends that the sentence exceeds the minimum allowed under LSA R.S. 15:529.1. (Appellant's brief, pg. 6) He was only multiple billed on one count. However, he concludes his argument by stating that the sentences are excessive. His argument is vague and he does not specifically address the other sentences. This writer interprets the second assignment of error as a request to review the multiple bill sentence.

. Armed robbery ranks as 1 on the crime seriousness level. La.S.G. 401 A. Appellant's prior conviction for armed robbery equals three points in the criminal history index table for prior felony convictions. La.S.G. 402 A. On the grid cell, appellant is classified as a C in the criminal history index and is at a grid level of 1. La.S.G. 403 A.